# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00235-CV

---

**Blayne Williams, Appellant**

**v.**

**City of Austin, Appellee**

---

### FROM THE 353RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-16-001826, THE HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Blayne Williams challenges the trial court's grant of the City of Austin's (the City's) motion for summary judgment, which dismissed his employment discrimination and retaliation claim that arose out of his employment with the Austin Police Department (APD). Because we conclude that the City conclusively established each element of the affirmative defense of res judicata, we affirm the trial court's order granting summary judgment.

## BACKGROUND

Williams was a police officer with APD. In April 2013, Williams was indefinitely suspended after an incident that occurred while Williams was working off-duty security at a hotel. Williams appealed his suspension to an independent hearing examiner. *See* Tex. Loc. Gov't Code § 143.057 (providing process for police officer to appeal indefinite suspension to independent third-party hearing officer rather than to Police Officers' Civil Service

Commission). In October 2014, the hearing examiner retroactively reduced Williams's suspension to fifteen days and reinstated him to his position.

Williams returned to work in November 2014. He was required to complete a fitness and psychological assessment before returning to work. He also was not allowed to hold outside employment. He completed the requirements and returned to work. On January 23, 2015, his first day back on patrol, Williams answered a family-violence call. A few days later, a supervisor filed an Internal Affairs complaint requesting that an investigation be conducted regarding Williams's response to the family-violence call and to determine whether Williams violated department policies.

In late February 2015, Williams filed an administrative discrimination complaint with the Texas Workforce Commission (TWC) alleging discriminatory retaliation by APD. Specifically, the alleged retaliatory actions included that APD required him to submit to a fitness and psychological assessment when he returned to work after his first suspension, that he was denied the opportunity to engage in outside employment, and that APD had initiated an internal investigation regarding the family-violence call.

In late July 2015, after the conclusion of APD's internal investigation, Williams was notified that he was indefinitely suspended from his position with APD. He appealed his suspension to an independent third-party hearing examiner. *See id.* Williams filed another administrative complaint with TWC alleging that his indefinite suspension was a part of ongoing retaliation and continuing discrimination against him. On April 11, 2016, Williams received his right to sue letter from TWC for his first administrative complaint that had been filed in February 2015. About two weeks later, his indefinite suspension was upheld by the independent third-party hearing examiner that heard his indefinite suspension appeal. *See id.*

2

A few days later, on April 28, 2016, Williams sued the city and alleged three grounds, only one of which is at issue in this appeal: his Chapter 21 retaliation claim brought under the Texas Commission on Human Rights Act. *See* Tex. Lab. Code §§ 21.001–.556. Specifically, the alleged retaliatory actions included that APD required him to submit to a fitness and psychological assessment when he returned to work, that he was denied the opportunity to engage in outside employment, and that his employment was terminated. His other two grounds, which are not at issue here, were dismissed with prejudice when the trial court granted the City's plea to the jurisdiction regarding those two claims.

In December 2016, while this case was pending in the trial court, Williams, acting without the benefit of counsel, sued the City in federal district court. *See Williams v. City of Austin*, No. 1:16-CV-1338-RP, 2017 WL 2963513, at *1 (W.D. Tex. July 11, 2017) (order). Williams asserted in his federal complaint that the Austin chief of police, a former Austin chief of police, and the Austin police monitor were involved in a conspiracy to violate his constitutional and civil rights to due process, to equal protection, to make and enforce contracts, and to be protected from discrimination and that his termination from employment with APD was evidence of that conspiracy. His complaint included a detailed factual recounting of the hotel incident that led to his suspension and the family violence call that led to the termination of his employment. He also alleged that the chief of police committed tortious interference with an existing contract: specifically, by interfering with Williams's ability to engage in outside employment with the hotel where he previously worked. His claimed damages included "his annual income from the City of Austin." He included the word "retaliation" several times in his complaint, although without mentioning which legal theory he relied on, which the federal district court interpreted as a Section 1981 civil rights retaliation claim. *Id.* at *9; *see also*

3

42 U.S.C. § 1981. In July 2017, the federal district court dismissed Williams's claims with prejudice on the City's motion for summary judgment. *Williams*, 2017 WL 2963513, at *10 (dismissing some claims with prejudice and some claims with leave to amend); *Williams v. City of Austin*, No. 1:16-CV-1338-RP, 2017 WL 3166679, at *1 (W.D. Tex. July 25, 2017) (order) (noting that after Williams failed to amend, district court entered final judgment dismissing all claims with prejudice).

In September 2021, the City filed a motion for summary judgment in the trial court in this case and asserted that there was no genuine issue of material fact regarding the affirmative defense of res judicata as applied to Williams's retaliation claim. Specifically, the City argued to the trial court, and contends on appeal, that Williams filed a series of pro se federal cases[1] challenging the same conduct that is challenged in this case. The City also argued that even if res judicata did not apply to Williams's retaliation claim for requiring him to submit to rehire requirements, he failed to establish a prima facie case because training requirements do not constitute an adverse employment action within the meaning of a Chapter 21 retaliation claim.

Williams's response to the City's motion included Exhibits A, B, and C. Exhibit A included a copy of the TWC right-to-sue letter. Exhibit B was a document titled "Sworn Declaration of Blayne Williams," (the declaration). It was not notarized, and the parties disagree

---

[1] While Williams filed multiple federal suits against the City, we only discuss the one necessary to the resolution of this appeal. *See* Tex. R. App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

regarding whether it was signed by Williams.[2] In the declaration, Williams explained his intention not to include the claims in this lawsuit as part of his federal lawsuits. The declaration's pages 4 and 5 include a duplicate paragraph that references Exhibit A and states that it includes "City of Austin Records that were provided to me, records I submitted to the EEOC to support my charge, records of the Texas Workforce Commission that were provided to me, the EEOC and [my attorney.]" Exhibit C included emails between the parties' counsel regarding the City being unopposed to Williams's filing his summary judgment response. Williams separately filed additional Exhibits with an unsworn declaration from his trial attorney declaring that the documents were true and correct and included copies of his right-to-sue letter, his EEOC intake questionnaire, the hearing examiner's decision, and Williams's employment records from APD.

The City replied and objected to Williams's Exhibit B, arguing that it was inadmissible because it was not sworn to before a notary, *see* Tex. Civ. Prac. & Rem. Code § 18.002 (providing form for sworn affidavits), because it also did not meet the requirements for an unsworn declaration because it was not signed on page 4, *see id.* § 132.001 (allowing for unsworn declaration in place of sworn declaration or affidavit when it includes signed jurat), and because it referenced documents not attached to it, *see* Tex. R. Civ. P. 166a(f) (requiring that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith").

---

[2] Specifically, the parties' disagreement focuses on whether Williams signed the declaration when page 4 of the document includes a signature line with no signature, but page 5 includes all the same text except the first paragraph from page 4 as well as Williams's signature on the signature line.

The trial court sustained the City's objection to Williams's declaration, struck the declaration, and granted summary judgment in the City's favor. Williams appealed.

**STANDARD OF REVIEW**

"We review summary judgments de novo, viewing the evidence in the light most favorable to the non-movant, crediting evidence favorable to the non-movant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Zive v. Sandberg*, 644 S.W.3d 169, 173 (Tex. 2022). A party moving for traditional summary judgment must demonstrate that "there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Tex. R. Civ. P. 166a(c). This can be done either by the movant conclusively negating at least one of the essential elements of a cause or by conclusively establishing each element of an affirmative defense. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995).

A genuine issue of material fact exists if it "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017) (citing *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). Evidence does not create an issue of material fact if it is "so weak as to do no more than create a mere surmise or suspicion" that the fact exists. *Id.* (citing *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014)). When, as here, the trial court does not specify the grounds for granting the motion, we must uphold the judgment if any of the grounds asserted in the motion and preserved for appellate review are meritorious. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

6

We review evidentiary rulings, including those connected to a summary judgment motion, for an abuse of discretion. *See Starwood Mgmt. LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017) (per curiam). We do so by considering whether the trial court acted "without reference to any guiding rules and principles." *Id.* Even if evidence was erroneously excluded, we will not reverse unless the appellant shows that the error was harmful. *Texas Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000); Tex. R. App. P. 44.1(a).

## DISCUSSION

Williams's first three issues challenge the trial court's decision to strike his declaration. His fourth issue challenges the trial court's grant of summary judgment.

Even if the declaration was excluded in error as Williams suggests, consideration of the declaration would not change the analysis of the res judicata and summary-judgment issue, and thus, any error in excluding the affidavit is not reversible error. *See* Tex. R. App. P. 44.1(a) (establishing standard for reversible error in civil cases as requiring complained of error to have "probably caused the rendition of an improper judgment" or "probably prevented the appellant from properly presenting the case to the court of appeals").

"Because the first lawsuit at issue in this case was decided in federal court, federal law controls the determination of whether res judicata bars the present state court proceeding." *San Antonio Indep. Sch. Dist. v. McKinney*, 936 S.W.2d 279, 281 (Tex. 1996). Under federal law, the doctrine of res judicata applies if (1) the parties in both suits are identical; (2) the prior judgment was rendered by a court of competent jurisdiction; (3) there is a final judgment on the merits; and (4) the same cause of action is involved in both suits. *Id.* A dismissal with prejudice in a federal suit is considered a judgment on the merits for res judicata purposes. *Epps*

7

*v. Fowler*, 351 S.W.3d 862, 868–69 (Tex. 2011) (citing *Dean v. Riser*, 240 F.3d 505, 509 (5th Cir. 2001)).

Here, Williams contends that the City failed to establish the fourth res judicata element—whether the same cause of action is involved in both suits. Williams contends that res judicata does not apply because his affidavit explained that it was his subjective intent to not bring any Chapter 21 or Title VII claims in federal court and that he did not intend for the federal case to substitute for the state case. However, res judicata not only applies to claims brought in prior suits, but also to "previously available" claims that "could have been raised" even if they were not raised in the prior proceeding. *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594 (2020); s*ee also Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 561 (5th Cir. 1983) (holding that whether claims are separate causes of action under different statutory schemes is not test for whether res judicata bars claim in subsequent suit). Thus, Williams's subjective intent regarding whether he intended to raise the claims in federal court is not relevant to our review, and even if the trial court had admitted his affidavit, it would not change our analysis. *See Oreck Direct, LLC v. Dyson*, 560 F.3d 398, 402 (5th Cir. 2009) (rejecting appellant's argument that "transactional test" should be abandoned in favor of "parties' actual intentions"). Instead, we must analyze his claims to determine whether they were "previously available" to him, such that he "could have" raised them. *See Lucky Brand Dungarees, Inc.*, 140 S. Ct. at 1594.

To determine whether the prior and current suits involve the same cause of action, we must apply the transactional test in which "a prior judgment's preclusive effect extends to all rights of the plaintiff with respect to all or any part of the transaction, or series of connected transactions, out of which the original action arose." *Davis v. Dallas Area Rapid Transit*,

8

383 F.3d 309, 313 (5th Cir. 2004) (cleaned up). The focus of the transactional test is whether the two actions are based on the "same nucleus of operative facts." *Id.* To determine whether two actions are based on the same nucleus of operative facts, we may consider "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.*

Here, Williams's federal complaint asserted that the chief of police was involved in a conspiracy to violate his rights to equal protection, to make and enforce contracts, and to be free from discrimination and that his termination from employment with APD was evidence of that conspiracy. *See Nilsen*, 701 F.2d at 561 (holding that earlier Title VII employment-discrimination suit barred later Section 1983 civil-rights suit alleging discriminatory practices in violation of equal protection). The district court specifically noted that Williams's use of the term "retaliation" multiple times caused the court to address a "potential retaliation claim" under Section 1981. While Williams did not specifically complain about the fitness and psychological assessment requirements in his federal complaint, he did specifically complain about a different return-to-work requirement that also arose out of his return from suspension after the hotel incident—APD's decision to not allow him to participate in outside employment. We conclude that Williams's federal and state claims all arose from the same nucleus of operative facts—the alleged discriminatory and retaliatory practices of APD, which were alleged to have occurred during Williams's return to work after his suspension and caused his termination. Additionally, the record reflects that Williams was aware of all three grounds of his retaliation claim prior to filing his federal petition because he included them in his administrative complaints filed with TWC.

9

Thus, we conclude that all three grounds for his retaliation claim were available to Williams and could have been raised at the time he initiated his federal case. *See Davis*, 383 F.3d at 316 (holding that when claims in both suits share same nucleus of operative facts that appellant was on notice to include them in previous cause); *see also Turner v. Richardson Indep. Sch. Dist.*, 885 S.W.2d 553, 560 (Tex. App.—Dallas 1994, writ denied) ("When the federal court dismissed the Turners' retaliation claim on the merits, all retaliation claims alleged in the federal petition were disposed of on the merits. We conclude, therefore, that the federal test for res judicata is satisfied with regard to the Turners' non-Whistleblower retaliation claims."). Therefore, the same cause of action is involved in both suits and the fourth element of res judicata is satisfied.

Williams also contends that he could not have brought his retaliation claim in federal court because his right-to-sue letter had expired, resulting in the federal court lacking jurisdiction over his state law claims. *See McKinney*, 936 S.W.2d at 281 (explaining that even if all four res judicata requirements are established, "res judicata will not apply if the federal court [] lacked jurisdiction over the omitted state law claims"). The City contends, as it did in the trial court, that the federal court had jurisdiction because the right-to-sue letter requirements are non-jurisdictional.

There are two administrative complaints that are relevant to this issue. Williams's first administrative complaint included his allegations of retaliation after he returned to work following his first suspension and leading up to the initiation of the internal investigation after the family violence call. He received a right-to-sue letter from TWC more than sixty days before he filed his federal petition. *See* Tex. Lab. Code § 21.254 ("Within 60 days after the date a notice of the right to file a civil action is received, the complainant may bring a civil action

10

against the respondent."). However, the sixty-day period for filing suit following notice of a right to sue letter is not jurisdictional, even when the claim is against a governmental entity. *Stafford v. Hunt Cnty., Tex.*, No. 3:10-CV-1378-M, 2011 WL 2681972, at *3 (N.D. Tex. July 11, 2011) (mem. op. & order) (explaining that "sixty-day period is not considered jurisdictional under Texas law and thus does not prevent a district court from considering the TCHRA claim"); *McCollum v. Texas Dep't of Licensing & Regul.*, 321 S.W.3d 58, 64 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (holding that Section 21.254's sixty-day period is not jurisdictional).

Williams's second administrative complaint included allegations of retaliation surrounding his indefinite suspension from employment following the family-violence call and referenced ongoing retaliation and discrimination by APD. The record contains no right-to-sue letter for this administrative complaint. However, the lack of a right-to-sue letter does not prevent a petitioner from filing suit. *See* Tex. Lab. Code § 21.252(d) ("Failure to issue the notice of a complainant's right to file a civil action does not affect the complainant's right under this subchapter to bring a civil action against the respondent."). Further, failure to request a right-to-sue letter does not affect the trial court's jurisdiction. *El Paso Cnty v. Kelley*, 390 S.W.3d 426, 429 (Tex. App.—El Paso 2012, pet. denied) (holding that appellant was not required to request right to sue letter "and the fact that he sought no such letter did not deprive the trial court of subject matter jurisdiction"). Therefore, neither the expiration of Williams's right-to-sue letter received after his first administrative complaint nor the lack of a right-to-sue letter for his second administrative complaint would have precluded the federal court from asserting jurisdiction over Williams's retaliation claim.

Because Williams could have brought his retaliation claim when he filed his federal case, we conclude that the trial court did not err when it determined that the City had

11

demonstrated that there is no genuine issue as to any material fact because it conclusively established each element of its affirmative defense of res judicata and thus was entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Randall's Food Mkts., Inc.*, 891 S.W.2d at 644.

Because we conclude that summary judgment was proper under the theory of res judicata, we do not consider whether it would also be proper on the State's alternative summary judgment ground. *See* Tex. R. App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."); *Provident Life*, 128 S.W.3d at 216 (holding that when trial court's order does not specify grounds for granting summary judgment, appellate courts must affirm summary judgment if any theories presented to trial court and preserved for appellate review are meritorious). We overrule Williams's fourth issue.

## CONCLUSION

Because we have found no reversible error, we affirm the judgment of the trial court.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Triana and Smith

Affirmed

Filed: April 4, 2024

12